Next case on the docket is Pickett v. Williams, cause number 5-04-0598. Parties appear ready to proceed. Justice Goldenhirsch has recused himself from this case. So as you can see, there are only myself and Judge Spomer here at this time. Judge Wexton has been assigned, and of course, he'll have the opportunity. He's not here, but he'll have the opportunity to listen to the oral argument on the Supreme Court's website and he'll fully participate in the decision in this case. So with that, Mr. Whiteside, you may proceed, sir. May it please the court. My name is Kyle Whiteside, and I am arguing on behalf of the defendant's appellant, Laura Williams, as administrator of the estate of Thomas Williams. I'm afraid I'm without much of a voice today, so I shall try to be as audible as I can and keep my remarks brief. By way of introduction, this case began with the defendant appellant, Laura Williams, and her late husband entering into a contract to purchase the single family residence of the plaintiffs. Ultimately, the sale did not close, as the defendants believed that they had properly canceled the contract pursuant to an inspection contingency clause. After the failure to close the sale, the plaintiffs brought suit against the defendants, the Williams, for breach of contract. Additionally, the Williams' realtor, Diana Naney, was sued for tortious interference, as was the realtor agency which employed Diana Naney, Royce Realty Incorporated. The first trial ended in a mistrial, and the second trial resulted in a jury verdict in favor of plaintiffs. $35,500 were awarded as damages against the Williams'. $60,000 in punitive damages were awarded against Diana Naney, and $120,000 were awarded as punitive damages against Royce Realty Incorporated. Additionally, pursuant to the real estate contract, which allowed the recovery of attorneys' fees, an award of $70,000 of attorneys' fees was awarded against the Williams'. And in my oral argument today, it is one of the issues which I would like to address. The standard of review for an award of attorneys' fees is for an abuse of discretion. The party seeking an award of attorneys' fees has the burden to present sufficient evidence from which the court can determine the reasonableness of their claim to fee. A fee petition must specify the services performed, by whom they were performed, the time expended on the services, and the hourly rate charged for those services. The party which seeks the fees must present the court with detailed evidence maintained during the course of the litigation, containing facts and computations upon which the charges are predicated. Once the court has this information, it then uses the following factors to evaluate the reasonableness of the fee. These factors are whether there is a reasonable connection between the fees and the amount involved in the litigation, the benefit of the services to the client, the nature of the case, the novelty or difficulty of the case, and the importance of the matter. As I mentioned, $70,000 were awarded as attorneys' fees against the Williamses. This figure was arrived at by an hourly rate of $200 per hour, multiplied times 350 hours worth of time, which were attributed to the case against the Williamses. Again, I make reference to that trial. There was a claim for breach of contract against the Williamses, and tortious interpretation of the claims against Clannan and his loyalty. The trial court properly found in this order awarding attorneys' fees that only the time expended on the case against the Williamses was properly awarded as attorneys' fees. The fee petition submitted by the plaintiffs does not differentiate which attorney performed which work, and does not differentiate which work was performed in furtherance of which case. In their fee petition, the plaintiffs sought the awarding of all attorneys' fees for all time worked, not merely the time worked on the case against the Williamses. At the hearing on attorneys' fees, the parties entered into a stipulation. The stipulation was that 100 hours of attorney time was spent solely against the case against the Williamses. 150 hours worth of time was spent solely against the tortious interference defendants. And the remaining 300 hours of time could not be distinguished as to which case those hours were worked against. Now, for three reasons, I submit that the award of $70,000 of attorneys' fees was an abuse of discretion. The fee petition was improper because it was two attorneys, Mr. Magg or Mr. Armbruster, who represented the plaintiffs throughout the litigation. The fee petition did not identify which of these two attorneys performed the work. Second off, the fee petition did not indicate as to which work was performed in furtherance of which case. Without these crucial factors, the court did not have enough information to then take on the second step in evaluating the reasonableness of the fees. Therefore, I submit that it was an abuse of discretion to award fees based upon this fee petition. Second off, there's a lack of evidence to support trial court's entry of 350 hours of attorney time as against the Williamses. Or a review of the record shows that the only evidence submitted as to whether hours of attorney time were worked against the Williamses was this 100-hour stipulation. I submit that the plaintiffs had a burden to prove or provide evidence as to any claimed hours which were worked solely against the Williamses in order to be properly awarded those fees. At the hearing on attorneys' fees, no further evidence was submitted to substantiate that any time beyond this 100-hour stipulation was worked solely against the Williamses. And again, the fee petition does not Furthermore, the trial court's awarding of 350 hours worth of time does not concord with the way the trial was conducted. A review of the record, I believe, shows that the more involved case and that more time was dedicated to pursuing the case against Royce Realty and against Diana Nanny, the tortious interference defendants. Yet the lion's share of the attorney time the trial court found was awarded against the Williamses. Because the trial court ignored this 100-hour stipulation and lacked any further evidence to add the additional 250 hours worth of time as awardable against the Williamses, I submit that this was an abuse of discretion. Lastly, I submit that any fees awarded for work performed by Attorney Armbruster were not proper because there was no evidence offered or foundation offered for any of the fees claimed by Mr. Armbruster. Again, to draw your attention to the fee petition, none of Mr. Armbruster's time is marked as performed or differentiated between time performed by Mr. Mack or Mr. Armbruster. And Mr. Armbruster did not participate in the hearing on attorney's fees. So no evidence was offered there either to substantiate the hours claimed by Mr. Armbruster. Therefore, I submit as much as I can. Just to make sure I understand, at the fee hearing, was there any evidence introduced? Or did the judge just consider the fee petition with the attached billing? At the hearing, I believe Mr. Mack gave testimony as to his experience established as hourly rate at the time that he worked. But otherwise, I believe the only other evidence was the fee petition and the attachments. What you said? Otherwise, I believe the only other evidence was the fee petition and the attachments. And I'm just asking because I haven't seen the record yet. I mean, when Mr. Mack testified, did he give any testimony about Mr. Armbruster's bill? I mean, did he say that he'd reviewed it and it was reasonable in the area and so forth? I believe the fee petition, as well as Mr. Mack testified as to Mr. Armbruster's hourly rate. But as to the time worked by Mr. Armbruster, there was an attempt to contact Mr. Armbruster via telephone. But ultimately, that failed. And Mr. Armbruster could not be produced to testify at the hearing. So I do not believe that there was any foundation laid for the actual time entries of Mr. Armbruster. Was there any contrary testimony offered by your side? The only contrary testimony was to contravert the hourly fee, which was initially claimed. But if memory serves me correctly, Your Honor, the plaintiffs were claiming an hourly fee of $300 an hour, which I believe we put on an expert to contravert that hourly fee. Lastly, Your Honor, I believe that the award of $70,000 is an abuse of discretion because it fails the reasonableness factors analysis. Turning to the factor of whether there is a reasonable connection between the fees and the amount involved in the litigation, the fees recovered of $70,000 almost doubles the amount recovered of $35,500. Thus, I submit that there is not a reasonable connection between the fee charged as opposed to the amount recovered. The nature of the case also, I do not believe, and I submit does not warrant an award of $70,000 in fees because the case was a rather straightforward breach of contract case. It did not present any novel issues at trial. And the nature of the case was fairly unambiguous and straightforward. Thus, in light of these factors, I submit that the $70,000 attorney's fee award was excessive and of abuse of discretion. And in conclusion, I would ask the court to enter an order reducing the amount of attorney's fees recoverable to the 100 hours supported by the evidence or otherwise vacate the award of attorney's fees and rename this case for further proceedings and instructions. Stand on your brief on your other issues? Yes, sir. I guess is what you're doing. OK. All right, thank you. Thank you, Your Honor. Mr. Magg. Thank you. May it please the court, counsel? Addressing the issue of the attorney's fees, which is what the nature of the oral argument was, in answer to some of your questions that you posed to counsel, it is my recollection Mr. Armbruster did not testify, but I did testify. Counsel is correct. The only rebuttal testimony that I recall was, I believe it was Joel Coonan, who was submitted by the defense to testify as to what a reasonable hourly rate at that time in the Madison County area was. What did he say? He challenged it. I don't remember if we asked for $275 or $300 an hour, but he said that was excessive. The trial court cut it to $200 an hour. So it did get cut? Substantial. Oh, OK. Yeah, the trial court in no way gave us nearly what we asked for in our attorney fees petition. So you weren't awarded the $300 an hour anyway? We were not awarded the $300 or $275, whichever it was an hour anyway. Well, what about in terms of the fee petition and everything, was there any kind of an affidavit for Mr. Armbruster saying, I did work these hours shown? There was an affidavit. I believe I was the affiant on it, setting forth what the hours were and that they were kept in the usual, basically a business record affidavit. My recollection is I was subject to cross-examination. And I'm not sure that the trial court even took the affidavit at face value. I think the trial court probably primarily considered the testimony as opposed to the affidavits. But all that is in May. Even if you find that what was awarded in attorney's fees was excessive, it appears that counsel is not disputing that $200 an hour is reasonable and that there was $100 an hour. I don't want to say that the case is moved, but from a practical standpoint, that there's not going to be any real difference other than possibly having to retry this. There's only one defendant left. The estate of Thomas Williams, the two real estate agents aren't part of this appeal. I believe Justice Spalmer was on the prior panel that dealt with the real estate agents, which is subsequently settled. Did they settle? They settled. They did settle. Well, their insurance company settled. Their insurance company settled. OK. Laura Williams has voluntarily dismissed her appeal, although the case was tried eight years ago. The house was ultimately purchased, exploded. There's no set off now? That, I'm not entirely sure. I was not part of what the settlement was at the time, so I don't even know what it said. OK. Just told me. Did you say the house exploded? The house exploded. Well, maybe it's a blessing. He didn't buy this house. Well, not this house. Oh, the one that was settled. The one that exploded on the street. So I would ask that Your Honor to affirm. I know it's not a legal argument, but I really don't want to have to try this case again for no practical benefit. Nobody wants to talk about apportionment between contractual and tort causes of action. Actual damages? Actual damages for human rights. I'm standing on your briefs. OK, that's good. And I would ask that you affirm, unless you have any other questions. Those burps were good. Any rebuttal? We always tell people, you don't have to use all your time. So OK, we appreciate it. All right, we thank you for your briefs and your arguments. We'll take this matter under advisement and enter a decision in due course. And we'll be in recess for a few moments. We'll be back for the 11 o'clock case.